UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN BRISSET ROME | * | CIVIL ACTION |
| VERSUS | * | NO. 22-583 |
| ACADEMY SPORTS AND OUTDOORS, INC., ET AL. | * | SECTION "P" (2) |

**ORDER AND REASONS**

Before the Court is a Motion in Limine to Exclude or Limit Testimony of Mark E. Williams filed on behalf of Defendant Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy"). ECF No. 130. Plaintiff Kathleen Brisset Rome ("Plaintiff") timely filed an Opposition Memorandum, and Academy filed a Reply. ECF Nos. 145, 148. Having considered the record, the submissions and arguments of counsel, and the applicable law, Academy's Motion in Limine to Exclude or Limit Testimony of Mark E. Williams (ECF No. 130) is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** for all the reasons stated herein.

**I.     BACKGROUND**

Plaintiff filed this diversity personal injury suit against Academy seeking damages for injuries she allegedly sustained on April 9, 2021 when a canopy tent fell off of a shelf and struck Plaintiff on the back of her neck and head while she was shopping at an Academy location in Metairie. ECF Nos. 1-1, 10. Trial is set to commence on Monday, April 22, 2024.

Academy seeks to exclude or limit the testimony of Mark E. Williams, an architect whom Plaintiff intends to call to testify about the display of canopies at Academy's Metairie store. ECF No. 130. Academy argues Williams has no relevant experience in the retail industry and, thus, is "plainly not qualified" to testify or offer any opinions regarding retail safety. Academy further contends Williams' methodology is neither scientific nor reliable as required under *Daubert*;

1

Williams' opinions will not assist the trier of fact in understanding the evidence or determining a fact at issue as required by Federal Rule of Evidence 702; and Williams' opinions on causation should be excluded given his lack of medical expertise and because allowing him to testify about the ultimate issue would permit him to invade the province of the jury. Finally, Academy asserts, Williams should not be allowed to offer any testimony as to Academy's overall store sales because this information is irrelevant in this falling merchandise lawsuit.

In Opposition, Plaintiff argues Williams' occupation as an architect renders him uniquely qualified to testify regarding standards for retail displays, industry best practices, and the purportedly dangerous way in which the subject canopy was displayed. ECF No. 145. Plaintiff notes that Williams conducted "scientific testing" on an exemplar canopy, researched policies used by other large retailers, and reviewed Academy's safety handbook and planogram. Plaintiff further asserts that, even though Williams has not worked for retail stores, his knowledge as an architect will help the jury understand the facts and evidence in this case because Williams can share his industry research on best practices for retail displays and testify about his scientific testing and measurements. In response to Academy's argument that Williams cannot testify about medical causation, Plaintiff indicates that Williams will not testify about the extent of injuries Plaintiff allegedly sustained. Plaintiff argues, however, that Williams should be allowed to testify regarding Academy's sales figures because "it goes to the ultimate issue as to whether Academy acted prudently and whether it had the means to safeguard and prevent the subject incident from occurring." *Id*. at 6.

In Reply, Academy reiterates its arguments that Williams is not qualified in the proffered field of retail display safety, has never designed shelving or display units that were used in retail stores, and offers nothing more than common sense observations that a lay person is capable of

understanding on her own. ECF No. 148. Academy further argues Williams' review of best practices for retail displays does not render him an expert in that field, and the "best practices" that Williams cites can be summarized as "make sure merchandise is displayed safely." *Id*. at 5. Academy also repeats that Williams' testing methods are unreliable because he did not test the same type of canopy, and Williams cannot testify regarding causation or Academy's overall sales. *Id*. at 7-10.

## II. APPLICABLE LAW

The grant or denial of a motion in limine is within the sound discretion of the trial court and will be reversed only for abuse of discretion and a showing of prejudice.[1] The Federal Rules of Evidence, rather than state law, govern the admissibility of evidence in diversity cases,[2] and the district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[3] Under Rule 702, as amended on December 1, 2023,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[1] *Thomas v. Ameritas Life Ins. Corp.,* 34 F.4th 395, 399 (5th Cir. 2022) (citing *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005) (internal citation omitted)).
[2] *See Chevron Oronite Co., L.L.C. v. Jacobs Fields Servs. N. Am., Inc.,* 951 F.3d 219, 227 (5th Cir. 2020).
[3] *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 138–39 (1997*); Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 371 (5th Cir. 2000).

FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence is not only relevant, but reliable."[4]  The court's gatekeeping obligation involves a two-part inquiry.

First, the court determines whether the expert testimony is reliable, which involves an assessment of whether the reasoning or methodology underlying the expert's testimony is valid.[5] The goal of this inquiry is to exclude expert testimony based merely on subjective belief or unsupported speculation.[6] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[7]

Second, the court must determine whether the expert's reasoning or methodology properly applies to the facts of the case and whether the testimony will assist the trier of fact in understanding the evidence.[8]  In other words, the second inquiry analyzes whether the expert's testimony is relevant.[9]

---

[4] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).
[5] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (citation omitted).
[6] *See Daubert*, 509 U.S. at 590.
[7] *Id*. at 592–94. In *Kumho Tire Co.,* the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case. Kumho Tire, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.
[8] *See Daubert*, 509 U.S. at 591; FED. R. EVID. 702.
[9] *Id*.

4

A court's role as a gatekeeper, however, does not replace the traditional adversary system.[10] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[11]

### III. ANALYSIS

Academy argues that this Court should exclude Williams' testimony for three reasons: (1) Williams is not qualified to give expert testimony regarding the safety of retail merchandise displays; (2) Williams' opinions are common sense observations and will not help the trier of fact understand the evidence or determine a fact at issue; and (3) Williams' ultimate opinions on causation invade the providence of the jury and must be excluded. Williams' report offers eight opinions:

> 7.1 The canopy display with unrestrained carry bags placed upright was dangerous in a manner that caused Rome to be struck and injured.
>
> 7.2 The canopy display with unrestrained carry bags placed upright was dangerous because it posed a hazard to shoppers browsing merchandise that violated nationally recognized standards for safe retail displays.
>
> 7.3 Displaying the canopy bag with the base inverted placed the wheels pointed up, which increased the likelihood that it would lean, become unstable, and topple off the shelf, particularly if unrestrained.
>
> 7.4 The lack of any guard or restraining device at the canopy display made it foreseeable that the upright carry bag would topple off the shelf and strike Rome.
>
> 7.5 Reasonable periodic inspections of the store aisles in accordance with nationally recognized standards for safe retail practices would have reliably identified the dangerous canopy display that caused Rome to be struck and injured.
>
> 7.6 Those responsible for customer safety should have known that the canopy display of unrestrained carry bags placed vertically with the wheels pointed up was dangerous and taken appropriate measures to protect customers.

---

[10] *See Daubert*, 509 U.S. at 596.
[11] *Id*. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

>   7.7 The failure of Academy Sports + Outdoors to comply with its Planogram for the canopy display violated corporate specifications for safety and exposed Rome to the dangerous condition that caused her to be struck and injured.
>
>   7.8 The failure of Academy Sports + Outdoors to maintain the canopy display in accordance with applicable safety practices of the retail industry violated the standard of care, and created the dangerous condition that caused Rome to be struck and injured.

ECF No. 130-4 at 9.

### A. Qualification as an Expert and Testimony Regarding Best Safety Practices

As an initial matter, the Court finds that Plaintiff has shown that Williams has sufficient knowledge, training and skill to offer his expertise on display hazards.

Specifically, Williams formed several conclusions regarding Academy's canopy display vis-à-vis retail industry best practices:

>   7.4 The lack of any guard or restraining device at the canopy display made it foreseeable that the upright carry bag would topple off the shelf and strike Rome.
>
>   7.5 Reasonable periodic inspections of the store aisles in accordance with nationally recognized standards for safe retail practices would have reliably identified the dangerous canopy display that caused Rome to be struck and injured.
>
>   7.6 Those responsible for customer safety should have known that the canopy display of unrestrained carry bags placed vertically with the wheels pointed up was dangerous and taken appropriate measures to protect customers.
>
>   7.7 The failure of Academy Sports + Outdoors to comply with its Planogram for the canopy display violated corporate specifications for safety and exposed Rome to the dangerous condition that caused her to be struck and injured.
>
>   7.8 The failure of Academy Sports + Outdoors to maintain the canopy display in accordance with applicable safety practices of the retail industry violated the standard of care, and created the dangerous condition that caused Rome to be struck and injured.

To reach these conclusions, Williams reviewed, *inter alia*, the pleadings in this matter, Academy's discovery responses and document production, surveillance videos, post-incident photographs, the National Safety Council's Accident Prevention Manual for Business & Industry, Loss Control: A

Safety Guidebook for Trades and Services, and safety publications and policies of other retailers. ECF No. 130-4 at 7. Plaintiff posits that Williams is qualified to reach these conclusions because he is a licensed architect whose education, training, and experience included the design and planning of commercial and retail buildings, including those containing shelving systems and palletized storage. Academy argues that Williams' lack of experience in retail safety and designing shelving or display units renders him unqualified to testify about best practices in retail safety.

Williams' curriculum vitae reflects over 30 years' experience as an architect with responsibilities including quality assurance policy and procedure, code and technical research, and safety and security installations. ECF No. 130-3 at 4-10. Although William does not have any credentials specific to the retail safety sector, his education and experience well equips him to assess and explain best safety practices. His synthesis of this information will assist the trier of fact in understanding safety standards in the retail space and whether Academy adhered to those standards. Academy's concerns regarding Williams' lack of experience in the interior retail space specifically is a matter of weight, not admissibility. Accordingly, Williams will be allowed to testify about conclusions 7.4 – 7.8, subject to the limitations discussed below.

## B. Stability Testing Methodology and Relevance

The court begins with an assessment of whether Williams' stability testing methodology is reliable. Three of Williams' conclusions involve Academy's placement and display of canopies, one of which allegedly struck and injured Plaintiff:

> 7.1 The canopy display with unrestrained carry bags placed upright was dangerous in a manner that caused Rome to be struck and injured.
>
> 7.2 The canopy display with unrestrained carry bags placed upright was dangerous because it posed a hazard to shoppers browsing merchandise that violated nationally recognized standards for safe retail displays.

> 7.3 Displaying the canopy bad with the base inverted placed the wheels pointed up, which increased the likelihood that it would lean, become unstable, and topple off the shelf, particularly if unrestrained.

ECF No. 130-4 at 9. Williams testified that he tested the stability of a 10-by-10 Easy Shade Canopy by weighing the object in two orientations multiple times, placing it horizontally and observing that it was stable, then placing it vertically on a hard surface and using a spring scale to apply force to the canopy to determine how much force was necessary to render the canopy unstable. ECF No. 145-1 at 10-11. Williams then placed the canopy on a hard surface for an extended period of time to confirm that the solid material of the canopy "conforms to the topography of the canvas bag," which "adds to the instability when it's upright in a vertical position and not restrained." *Id*. at 11. The "exemplar canopy" that Williams used for his testing, unlike the canopy that purportedly struck Plaintiff, did not have wheels or feet. *Id*. at 9.

Although Plaintiff bears the burden to prove by a preponderance of the evidence that Williams' testimony is the product of reliable principles and methods,[12] she offers no information regarding whether Williams' technique can or has been tested, has been subject to peer review or publication, has a known or potential rate of error or standards controlling its operation, or is generally accepted in the relevant scientific community. Further, while courts must conduct the *Daubert* analysis "flexibly" and the factors identified therein "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony,"[13] Williams' total failure to explain the origin of his methodology or point to some scientific support for the technique reliably predicting the likelihood that a canopy on display in a store is dangerous gives this Court, charged with the obligation of serving as a gatekeeper under applicable law, a great deal of pause and concern. The methodology is unreliable

---

[12] FED. R. EVID. 702.
[13] *Kumho Tire Co.,* 526 U.S. at 150.

in that Williams performed his test on a tent without wheels or feet, features he concluded would affect the stability of a vertically displayed canopy.

Even if Plaintiff had met her burden to prove by a preponderance of the evidence that Williams' methodology was reliable, she has failed to demonstrate the relevance of Williams' testimony. With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proponent of an expert's testimony must demonstrate that the proposed opinion "'would assist or determine a fact in issue.'"[14]

> There is no more certain test for determining when experts may be used than the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.[15]

"In other words, expert testimony is unnecessary where a jury can adeptly assess the situation using only their common experience and knowledge."[16]

Here, Williams' testing of a canopy that did not have wheels and feet is irrelevant to the determination of whether the canopy that allegedly struck Plaintiff, a canopy that had wheels and feet, was unreasonably dangerous based on its purported instability. Even if this mismatched analysis could provide the jury with an understanding of how the specific tent that struck Plaintiff may have fallen onto her, such an opinion is unnecessary. A reasonable lay person, looking at a long, narrow object stood vertically, is capable of concluding how it might move based on an imbalance or applied pressure and can do so without a scientific explanation. The Court finds this is a matter of common sense, and common sense is the bailiwick and jurisdiction of the jury. That

---

[14] *Henderson v. Atmos Energy,* 496 F. Supp. 3d 1011, 1016 (E.D. La. Oct. 21, 2020) (quoting *Bocanegra v. Vicmar Servs.*, Inc., 320 F.3d 581, 584 (5th Cir. 2003).
[15] Vogler v. Blackmore, 352 F.3d 150, 155 n.5 (5th Cir. 2003) (quoting FED. R. EVID. 702, Advisory Committee Note).
[16] *Henderson*, 496 F. Supp. 3d at 1016 (quoting *Peters v. Five Star Marine Serv.,* 898 F.2d 448, 450 (5th Cir. 1990) (cleaned up)).

being the case, and given its lack of reliable methodology and relevance, Williams' testimony regarding his testing of an exemplar tent shall be excluded.

## C. Causation

Defendant seeks to preclude Williams from testifying about causation, specifically Williams' conclusion that the allegedly dangerous design of the canopy display was the cause-in-fact of Plaintiff's being struck by the canopy and injured. Given Plaintiffs' stipulation that Williams will not testify regarding medical causation, the Court need not address that issue. Left for determination, then, is whether Williams may testify that Academy's purportedly unsafe display of canopies caused one of them to fall and strike Plaintiff. Defendant argues that he may not because to do so is to invade the province of the jury by addressing the ultimate issue in this case.

Under FED. R. EVID. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, the Fifth Circuit has made clear that Rule 704(a) "does not allow a witness to give legal conclusions."[17]

The final portion of Williams' opinions as outlined in 7.5, 7.7, and 7.8 (i.e., that certain elements "caused Rome to be struck and injured") all cross into the realm of legal conclusions which are reserved for the trier of fact. While Williams may testify about the potential danger of the canopy display given its alleged lack of compliance with the store's planogram and industry best practices, the Court finds he cannot declare that such dangers were the cause of Plaintiff's purported harm.

---

[17] *U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (citation omitted).

   D. **Academy's Overall Sales**

Given the permissive standard of relevance and the need to hear any potential testimony by Williams regarding Academy's overall sales in context, and with the light that may or may not come from relevant foundational testimony, the Court will defer ruling on this issue until trial.

**IV.   CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Academy's Motion in Limine to Exclude or Limit Testimony of Mark E. Williams (ECF No. 130) is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** for all the reasons stated herein.

New Orleans, Louisiana, this 15th day of April, 2024.

_____
**DARREL JAMES PAPILLION
UNITED STATES DISTRICT JUDGE**